In this case, my client was convicted of second-degree murder and a gun enhancement. I don't believe there was a whole lot of dispute as far as the trial evidence. The major issue of importance in this case, and I think it's also important to the appellate issues, is whether or not the appellant was guilty of murder, whether it be first or second degree, or whether he was guilty of manslaughter. And as I said, the appellate issues relate directly to that, and I think that that's one of the points that the lower courts failed to see in regard to some of the issues that were raised, is that connection to whether he was guilty of manslaughter or murder. So assuming there's jury misconduct in this case, the question is whether it had a substantial and injurious effect on the verdict. Why do you think it did? I guess to answer that question, the best way to do it would probably be to go through the two different pieces of evidence that came into the jury room. Well, let's take the dictionary then first. Why do you think that the limited exposure the jury had to the dictionary affected the verdict insofar as it was second degree versus manslaughter? So the dictionary definitions that we know the jury looked at, at least some members of the jury, were the definitions of a reasonable person, and the definition of heat of passion, I believe it was. And so those two definitions are probably the most important definitions in regard to manslaughter, and for the jury to determine what exactly is manslaughter in comparison to murder, and the different mental states, how provocation is defined. And if you look at first heat of passion, the dictionary definition that was looked at, it's extremely dissimilar to the actual legal definition from Calgic 8.42. But, and I think that was pretty well covered in the briefs, the differences between the dictionary definition and then what the actual legal definition in California is. But I think one thing that's important to look at here is the context in which the jury was looking at these dictionary definitions. It appears that there was a holdout juror who was not in agreement with the rest of the jurors or the appellant, excuse me, was guilty of murder. It appears that that juror, and this is something that the appellate court explicitly said, that juror was grappling with whether or not there was, whether or not his actions fit the definition of heat of passion, therefore making it a manslaughter as opposed to a murder. However, if I read all the declarations of the jurors, it seems to me that even when somebody said there was a dictionary definition, that all the jurors knew that the use of a dictionary was improper and told the juror to put it away. They weren't even going to look at it. Every declaration of the jury says that. And that's true, Your Honor. And so once a juror brings up a declaration or brings up the dictionary definitions, everybody says put that away. We're not supposed to rely on that. We're not supposed to have any part of that. Put it away. We're not relying on it. And then after that, they ask the judge the questions, and the judge answers the questions. Now, in my analysis of the five factors as to when I'm determined, when there's been a fair trial, I guess I'm trying to figure out how I determine that that wasn't fair. When everybody sitting in there is saying, and I've been a DJ before and jurors ask me questions, and even if there's misconduct, jurors are very responsible. They come out and they write and they tell me. They say this was irresponsible. This happened here. And they said, Judge, what are the definitions we ought to use? So how is that prejudicial? I think I read that's the explanation that the lower courts give for the most part and the AG argues. Well, but that's the definition. That's the explanation that on appeal in your kind of a case, I have to find it unreasonable given what the Supreme Court has told me to do. I understand. You know, I think if that explanation was entirely true, that it was such a minimal exposure that it made no difference, I think that the jury, as soon as that dictionary came out, would have made sure that it was put away. But instead of doing that, these two crucial definitions were read to this juror who was the holdout juror, these crucial definitions to the most important issue. But again, what's my standard of review here? I've got the state court, the highest court can look at this, and in the state system saying we look at this, we've looked at the record, we don't think there's any prejudice here. What Supreme Court case says that I can now say they don't know what they're talking about? The Supreme Court cases that we cited lay out the general rule, but as far as the applications of that rule, there are a number of Ninth Circuit cases that we cite here that I think are important in that regard. The one that I felt was most important was Marino v. Vasquez. It's a similar case. The issue there, and the same thing happened in that case. You know, the court corrects the definition. The problem, though, is that the juror is exposed to that other definition, and I think with definitions, especially in this case where we have heat of passion, if you read it, it's such a confusing definition to understand. Well, but in Marino, the term malice, as defined, was not consistent with the elements set forth in the jury instructions. That's true. And in this particular case, we don't have that at all. We have definitions which may have come out, may not have come out, and then with those definitions coming out, we have the juror saying, all of them, put that away. That's not where we're supposed to go. And then they ask the judge which gave definitions which were consistent with the jury instructions. I think even in Marino, the instructions given by the court correct that error, so whatever definition was read from the dictionary is later corrected by the court, by the jury instructions. The same thing happened here, and I think the dictionary definitions we have here are just as problematic as those in Marino. We have heat of passion. Marino, though, was a pre-Edford case. Does that make a difference? Excuse me? It was a case that was decided prior to the enactment of the Anti-Terrorism Act, so it had a different habeas standard. Does that make a difference? The standard of review, you know, for the appellant in that case was easier to reach. That's true. I think Judge Oliver had a question. No. Well, the juror in Marino had held out for about 30 days, too, which I think changed the facts a little bit. But in any event, I don't mean to be totally redundant of what Judge Smith has been saying, but if a juror is holding out and someone reads a definition trying to have him understand why she should come along and they say, well, let's see what the judge says, because that's important, and they go back and they hear what the judge has to say on it and the person changes his or her mind, that would seem to me that that's an entirely different situation. That seems to be proper. What does the judge have to say? I know Judge Smith has said this, but it seems to me that's how a good jury should proceed. And it sounds like they did exactly what they should have done. You disagree, obviously. Yeah, I disagree. And I would just say, you know, also this juror comes forward later after the verdict is reached with these concerns. And so in my mind, you know, the tone of the declaration also shows that that person feels that they might have been, you know, improperly influenced by what the other jurors did. So she just kept paying attention to what the juror was saying despite what the judge just told them. I think there is a strong possibility of that, and I think it's enough for us to question whether or not she would have reached that same conclusion had she not been exposed to that dictionary definition. Why don't you turn to the ballistics issue because your time is running down. Sure. Now, the ballistics issue, there's some issue about whether or not that that was misconduct itself, but I think it's fairly clear that that's the information that the juror gave to the other jurors was sort of expert testimony type information. And I don't think, I think that is misconduct because I don't think it can be classified as that person's life experiences. I think generally if a juror expresses their general life experiences, that wouldn't necessarily be misconduct, but I think in this case it absolutely is. So assuming that it is, how do you think, why do you think it affected the verdict? Well, I think there's a couple of reasons. First, the defense theory about manslaughter was supported by their theory that the shot was fired from the hip as opposed to aimed. So as opposed to aiming to shoot to kill this person, it was a shot from the hip. He said, he explained that it was in an effort to scare the victim. Now, this theory is, it depends on the jury believing what the pathologist said in his testimony about the angle. If the jurors don't believe it, if they believe this bounce around theory, so the bullet goes in and it can bounce around, then what the pathologist said, it calls into question what the pathologist said. But the pathologist did not state that the bullet's trajectory indicated it was fired at an angle. The pathologist said it... That's the defense argument, but the pathologist never said that. He said that in the back it entered lower than where it exited in the front. So he didn't say that it was at an angle, but based on the geometry, I think we can conclude that it... It doesn't need to require a conscious disregard for life. That's true. And if secondary murder requires a conscious disregard for life, then what's the significance of how Blair was holding the gun? If he shot it at somebody, isn't that a conscious disregard of life? And wouldn't the jury find it's a conscious disregard of life? The fact that Blair shot a rifle six times, isn't that sufficient evidence to find that he acted with a conscious disregard of life? I think all those issues are sort of sliding scale issues, so if he took aim and shot the guy in the head, I think that would be a much different story than if he just shot from the hip, which is what the defense said. You're saying then we're second-guessing the jury, and then after that, again, we're second-guessing the highest court of the state from which this came, which said it had no significance, and I'm trying to find the Supreme Court case to tell me I can do that. The California Supreme Court, I believe, just denied a review, so I don't think they reviewed the case. Well, but the court below them reviewed it. Right. And that's the one I look at. Right. Well, like I said, I think that the information that came from this juror is information that discredited the defense theory, and like I said, this was the most important issue in this case, is whether manslaughter or murder is what the defendant was guilty of. And the Supreme Court talks about why we're so concerned about external evidence coming into the jury room, and in this case, I think those concerns are highlighted. It's because it strips away from the defendant all of those due process protections, the right to effective assistance of counsel, cross-examination, the right to present evidence on his behalf. He very likely could have discredited this bounce-around theory, but I think the fact of the matter is that this theory hurt his case, and he was unable to defend himself against that, which is what he has a constitutional right to do. Our questions have taken you over your time. Thank you, Counsel. Thank you. Ms. Critchfield. May it please the Court. My name is Pam Critchfield with the State of California, representing Respondent. I would first argue as to the dictionary definitions being brought into the jury room that, yes, as Your Honors pointed out earlier, those definitions, the juror read those definitions and was asked to put the dictionary away because the jurors knew that it was wrong. I mean, there's really no question it was misconduct. No one's arguing that it was misconduct. We conceded it below, actually, in the trial court and in the State appellate court. So the standard is... The question is whether or not it affected the verdict. Harmless. Yes. Right. And going to the harmless question, though, are those five factors that are pointed out, including the fact that it was put away, they knew it was improper, which implies that they didn't rely on it. Shortly afterwards, they asked the trial court the definitions, which it was about 11 in the morning. They asked the trial court the definitions. The judge reread the Calgic instruction that was agreed upon by the defendant previously, and then two-and-a-half, two-and-a-half hours later, approximately, they reached a verdict. And the other issue, the other significant factor here is how incredibly strong the evidence was. Actually, I believe this was a first-degree murder case, and it was argued that way by the prosecutor. This defendant pursued this unarmed victim and fired a shotgun six times and hit him in the back as he was trying to get away. He was fleeing for his life. So the evidence is incredibly strong. The harmless, any definitions that were brought in were harmless. And as to the ballistics evidence, we would argue that's not misconduct. It's somebody, a juror who talks about his knowledge of a rifle and a .22 caliber bullet and what it would do inside your body is general knowledge. Well, where did he get this general knowledge? I mean, had he shot somebody before? Had he watched the bullet go through? Right, right. I don't know. It's not general knowledge that I would have. That's why I part ways with you on that, is that I understand how people have a knowledge of guns, but how a bullet goes through the body may or may not be general knowledge. If it was, he perhaps wouldn't have to spend such much time talking about it. Right. He might have been given the fifth Miranda warnings. Right. But in any event, even if it was misconduct, I think we argue that it, we submit that it was harmless. There was no, the pathologist's opinion did not depend on the bouncing around, you know, the exact nature of where the bullet went inside the body. But his argument is that it was, this comment was directed toward the issue of second degree versus manslaughter. And in the jury room, even though it may not look as significant in retrospect, it may have been significant in the jury room. At the time. At the time. So how do you respond to that? That the jurors came back and asked the questions, asked, submitted their questions relevant to heat of passion and reasonable person definitions to the judge, and the judge read the correct standard, read the calgic back to them, and it embodied the instruction. And I think that was completely proper, or we would submit that it was completely proper. And that that instructed them correctly. Any further questions from the panel? I think we have your hand up. If not, I'd submit it. Thank you. The case just heard will be submitted for decision. I used up all of your time in the first part, so, and we gave you a little extra, actually. So, unfortunately, there's no time left for rebuttal. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Oliver, Thomas, Smith